UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BETTY BERNHART, FAUSTO BRITO, CHARLES ROBERTS, and JORGE VIRUET, individually and on behalf of all persons similarly situated,<br><br>               Plaintiffs,<br><br><br>      -against-<br><br><br>ASTA FUNDING, INC., ASTA JOHN/JANE DOES 1-20, PALISADES COLLECTION, LLC, GARY STERN, PALISADES COLLECTION JOHN/JANE DOES 1-20, PRESSLER & PRESSLER, LLP, RICHARD A. FRANKLIN, RALPH GULKO, MITCHELL E. ZIPKIN, and PRESSLER JOHN/JANE DOES 1-20,<br><br>               Defendants. | 13 Civ. 02935 (RPP)(JLC) |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL ARBITRATION AND FOR RELATED RELIEF**

**NEW YORK LEGAL ASSISTANCE GROUP**
7 Hanover Square, 18th Floor
New York, NY 10004
(212) 613-5000

**HUGHES HUBBARD & REED LLP**
One Battery Park Plaza
New York, New York 10004
(212) 837-6000

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................................1

BACKGROUND ................................................................................................................2

ARGUMENT ....................................................................................................................5

I.   THIS COURT SHOULD DENY DEFENDANTS' MOTION TO COMPEL
     ARBITRATION BECAUSE DEFENDANTS HAVE NOT MET THEIR
     BURDEN TO SHOW THAT PLAINTIFFS AGREED TO ARBITRATE THIS
     DISPUTE. ...............................................................................................................5

     A.   Defendants Bear The Burden Of Establishing That Plaintiffs Agreed To
          Arbitrate This Dispute.............................................................................................5

     B.   Defendants Have Not Established That Any Plaintiff Agreed To Arbitrate. ..........6

          1.   Defendants Fail to Identify Any Supposedly Applicable Contracts............6

          2.   Defendants' "Evidence" Is Incompetent Even to Establish that Mr.
               Roberts and Mr. Viruet Had AT&T Wireless Contracts. ...........................9

          3.   Defendants Fail to Establish that Mr. Roberts and Mr. Viruet
               Accepted any Terms and Conditions. ........................................................12

     C.   All of the "Example" Terms and Conditions Plainly Exclude Plaintiffs'
          Collections-Related Claims From Mandatory Arbitration. .................................134

     D.   Defendants, As Non-Signatories, Cannot Invoke The Arbitration Provision
          Against Plaintiffs. ...............................................................................................17

          1.   Defendants Cannot Establish That Palisades Collection Is Assignee
               of AT&T's Rights to Plaintiffs' Accounts..................................................17

          2.   Neither The Pressler Defendants Nor Asta and Stern Have
               Established That They Can Enforce the Arbitration Provision As
               Palisades's Agents. .................................................................................18

          3.   Neither The Pressler Defendants Nor The Asta Defendants Can
               Assert The Arbitration Provision on the Basis of Estoppel. ......................21

     E.   If the Court Does Not Deny With Prejudice Defendants' Motion to
          Compel Arbitration, Plaintiffs are Entitled to Discovery and a Hearing on
          Disputed Issues of Fact. ........................................................................................26

II.  DEFENDANTS HAVE FAILED TO IDENTIFY ANY SPECIFIC DISCOVERY
     TO WHICH THEY ARE ENTITLED..................................................................28

III.    EVEN IF THE COURT GRANTS DEFENDANTS' MOTION AS TO SOME
        PLAINTIFFS OR FOR SOME DEFENDANTS, THE REMAINDER OF THE
        CASE SHOULD PROCEED. ............................................................................29

IV.     THE COURT SHOULD DENY DEFENDANTS' MOTION TO DISMISS MR.
        VIRUET'S CLAIMS BECAUSE THEY ARE DISTINCT FROM THE STATE
        COURT COLLECTION ACTION AGAINST HIM. ......................................................30

        A.      The Rooker-Feldman Doctrine Does Not Bar Mr. Viruet's Claims. .....................30

        B.      Claim Preclusion Does Not Bar Mr. Viruet's Claims. ............................................33

CONCLUSION ...................................................................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Adler, Coleman Clearing Corp.*, 205 F. App'x 856 (2d Cir. 2006).....................................12

*Genger ex rel. AG Properties Co. v. Sharon*, 910 F. Supp. 2d 581 (S.D.N.Y. 2012) ..................34

*Am. Shipping Line, Inc. v. Massan Shipping Indus., Inc.*, 885 F. Supp. 499 (S.D.N.Y. 1995) ........................................................................................................................................30

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643 (1986) .......................................15

*Bensadoun v. Jobe–Riat*, 316 F.3d 171 (2d Cir. 2003)............................................................5, 27

*Berger v. Cantor Fitzgerald Secs.*, 942 F. Supp. 963 (S.D.N.Y. 1996)........................................27

*Birmingham Assocs. Ltd. v Abbott Labs.*, 547 F. Supp. 2d 295 (S.D.N.Y. 2008) *aff'd*, 328 F. App'x 42 (2d Cir. 2009) ...........................................................................................22

*Britton v. Co-Op Banking Group*, 4 F.3d 742 (9th Cir. 1993).......................................................20

*Burgos v. Hopkins*, 14 F.3d 787 (2d Cir. 1994).............................................................................34

*Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655 (2d Cir. 1997) .......................21

*Carroll v. Leboeuf, Lamb, Greene, & Macrae, LLP, et al.,* 374 F. Supp. 2d 375 (S.D.N.Y. 2005)....................................................................................................................20

*Chang v. Lin*, 824 F.2d 219 (2d Cir. 1987)....................................................................................29

*Cousins v. Duane St. Assocs.*, 7 F. App'x 85 (2d Cir. 2001).........................................................35

*Crandall v. AT&T Mobility, LLC*, No. 07 Civ. 750 (S.D. Ill. Jan. 11, 2008) .................................7

*Darrah v. Friendly Ice Cream Corp.*, 328 F. Supp. 2d 319 (N.D.N.Y. 2004) ................................6

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985)............................................................29

*Dell Pub. Co. v. Whedon*, 577 F. Supp. 1459 (S.D.N.Y. 1984)...............................................10, 11

*Dreyfuss v. Etelecare Global Solutions-U.S. Inc.*, 349 F. App'x 551 (2d Cir. 2009)..........5, 6, 7, 8

*Dreyfuss v. eTelecare Global Solutions-U.S. Inc.*, No. 08 Civ. 1115, 2008 WL 4974864 (S.D.N.Y. Nov. 19, 2008), *aff'd*, 349 F. App'x 551 (2d Cir. 2009) .........................................7

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) ............................31, 32, 33

## TABLE OF AUTHORITIES
(Continued)

**Page(s)**

*Fonte v. AT&T Wireless Servs., Inc.*, 903 So.2d 1019 (Fla. Dist. Ct. App. 2004) ........................16

*Fritz v. Resurgent Capital Servs., LP*, No. 11-CV-3300 FB VVP, 2013 WL 3821479 (E.D.N.Y. July 24, 2013) ...........................................................................................34

*Gabriele v. American Home Mortgage Servicing, Inc.*, 503 F. App'x 89 (2d Cir. 2012) .......31, 32

*Gray v. Suttell & Assocs.*, No. CV-09-251, 2012 U.S. Dist. LEXIS 77906 (E.D. Wash. Mar. 16, 2012)...........................................................................................................26

*Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F. 3d 159 (3d Cir. 2010) ...............................................................................................................32

*Greenlight Reinsurance, Ltd. v. Appalachian Underwriters, Inc.*, No. 12 CIV. 8544 (JPO), 2013 WL 3835341 (S.D.N.Y. July 25, 2013)................................................30

*Hallmark v. Cohen & Slamowitz, LLP*, No. 11-CV-842S, 2013 WL 5178128 (W.D.N.Y. Sept. 16, 2013) ...................................................................................8, 9

*Harris v. Jacob Marsh, LLC*, No. 12-CV-356A, 2012 WL 3655357 (W.D.N.Y. July 6, 2012), 2012 WL 3655334 (W.D.N.Y. Aug. 23, 2012)............................................35

*Heiko Law Offices, P.C. v. AT&T Wireless Servs., Inc.*, 800 N.Y.S.2d 347 (Sup. Ct. N.Y. Feb. 22, 2005) ..............................................................................................16

*Heintz v. Jenkins*, 514 U.S. 291 (1995)........................................................................................15

*Hines v. Overstock.com, Inc.*, 380 F. App'x 22 (2d Cir. 2010) ....................................5, 12, 13, 26

*Hines v. Overstock.com, Inc.*, No. 09 Civ. 991 (E.D.N.Y. Sept. 22, 2009)..................................27

*Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77 (2d Cir. 2005)..................................31, 32

*Interbras Cayman Co. v. Orient Victory Shipping Co., S.A.*, 663 F.2d 4 (2d Cir. 1981) .............19

*JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163 (2d Cir. 2004) .............................................26

*Kasper Global Collection & Brokers, Inc. v. Global Cabinets & Furniture Mfrs. Inc.*, No. 10 CIV. 5715 (DF), 2013 WL 3388427 (S.D.N.Y. July 1, 2013)....................................11

*LaSala v. Needham & Co., Inc.*, 399 F. Supp. 2d 421 (S.D.N.Y. 2005) ......................................30

*Lawson v. Life of the South Ins. Co.*, 648 F.3d 1166 .....................................................................23

*Leatherwood v. Universal Bus. Serv. Co.*, 115 F.R.D. 48 (W.D.N.Y. 1987) ...............................35

## TABLE OF AUTHORITIES
(Continued)

**Page(s)**

*Lucy v. Bay Credit*, 792 F. Supp. 2d 320 (D. Conn. 2011)......................................................19, 24

*Luke v. Gentry Homes, Ltd*, 105 Haw. 241 (2004) .......................................................................20

*LVNV Funding LLC v. Guest*, 953 N.Y.S.2d 550 (City Ct. 2012)................................................18

*Marshall v. Grant*, 521 F. Supp. 2d 240 (E.D.N.Y. 2007) ...........................................................32

*Mascoll v. Strumpf*, No. 05-CV-667 (SLT), 2006 WL 2795175 (E.D.N.Y. Sept. 26,
2006) ..........................................................................................................................................33

*Massen v. Cliff*, No. 02-9282, 2003 U.S. Dist. LEXIS 7392 (S.D.N.Y. May 1, 2003) ................25

*McNamara v. Kaye*, 360 F. App'x 177 (2d Cir. 2009) ..................................................................32

*Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125 (2d Cir. 2003) .............................19

*In Re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185 (Tex. 2007)................................................20

*Miron v. BDO Seidman, LLP*, 342 F. Supp. 2d 324 (E.D. Pa. 2004) ...........................................25

*Mtume v. AT&T Wireless Servs., Inc.*, 2006 U.S. Dist. LEXIS 3607 (D.N.J. Feb. 1,
2006) ..........................................................................................................................................16

*Mtume v. AT&T Wireless Servs., Inc.*, No. 05 Civ. 5218 (D.N.J. Nov. 7, 2005)............................7

*O'Brien v. City of Syracuse*, 54 N.Y.2d 353 (1981) .....................................................................33

*Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362 (2d Cir. 2003)....................................5, 7, 8

*Ortho Pharmaceutical Corp. v. Cosprophar, Inc.*, 828 F. Supp. 1114 (S.D.N.Y. 1993) ..............10

*Overseas Oil Transp. Corp. of Panama v Phibro Energy A.G.,* 1989 A.M.C. 847. 850
(S.D.N.Y. Feb. 1, 1989)........................................................................................................18, 19

*Palisades Collection LLC v. Gonzalez* 809 N.Y.S.2d 482 (City Civ. Ct. 2005) ....................12, 13

*Palisades Collection LLC v. Haque*, No. 64375/05, 2006 N.Y. Misc. LEXIS 4036 (Civ.
Ct. Qu. Cty. Apr. 13, 2006)...............................................................................................12, 13

*Palisades Collection LLC v. Kedik*, 890 N.Y.S.2d 230, 231 (App. Div. 2009)............................11

*Palisades Collection LLC v. Roberts*, N.Y. Civ. Ct. Index No. CV-17437-06/BX......................13

*Palisades Collection LLC v. Virueto*, N.Y. Civ. Ct. Index No. CV-50882-06/BX ......................13

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

*Penberthy v. AT&T Wireless Servs. Inc.*, 354 F. Supp. 2d 1323 (M.D. Fla. 2005) .......................16

*Polygram Merch., Inc. v. N.Y. Wholesale Co.*, No. 97 Civ. 6489 (HB), 1998 WL 386437 (S.D.N.Y. 1998) ...........................................................................................11

*Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*, 38 F.3d 627 (2d Cir. 1994) ........................11

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)..........................................5

*Roby v. Corp. of Lloyd's*, 996 F.2d 1353 (2d Cir. 1993) ...........................................................20

*Ross v. Am. Express Co.*, 547 F.3d 137 (2d Cir. 2008)..........................................................5, 24

*Schafer v. AT&T Wireless Svcs., Inc.*, 04 Civ. 4149 (S.D. Ill. Sept. 13, 2004) ..............................7

*Schnabel v. Trilegiant*, 697 F.3d 110 (2d Cir. 2012) ...............................................................5, 12

*Schuh v. Druckman & Sinel, L.L.P.*, 602 F. Supp. 2d 454 (S.D.N.Y. 2009) ................................35

*Senftle v. Landau*, 390 F. Supp. 2d 463 (D. Md. 2005) ..................................................................32

*Shechet v. Abby Favali*, No. 05-5027, 2006 WL 1308656 (2d Cir. May 9, 2006) .......................32

*Sherrill v. Grayco Builders, Inc.*, 64 N.Y.2d 261 (1985) ...........................................................16

*Sierra Rutile Ltd. v. Katz*, 937 F.2d 743,750 (2d Cir. 1991)........................................................29

*Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354 (2d Cir. 2008) ..........................21, 22, 23

*In re Spiegel Inc.*, No. 03-11540, 2006 WL 2577825 (Bankr. S.D.N.Y. Aug. 16, 2006) ............15

*State of N.Y. v. Oneida Indian Nation of N.Y.*, 90 F.3d 58 (2d Cir 1996)..........................14, 15, 16

*Stechler v. Sidley, Austin, Brown & Wood L.L.P.* 382 F. Supp. 2d 580 (S.D.N.Y. 2005).................................................................22, 23, 24, 25

*In re Taranto*, No. 10-76041, 2012 WL 1066300 (Bankr. E.D.N.Y Mar. 27, 2012) ...................18

*Tellium, Inc. v. Corning Inc.*, 2004 U.S. Dist. Lexis 2289 (S.D.N.Y. Jan. 15, 2004) ..................19

*Thomson-CSF v. Am. Arbitration Ass'n*, 64 F.3d 773 (2d Cir. 1995) ..........................................18

*Todd v. Weltman, Weinberg & Reis, Co., L.P.A.*, 348 F. Supp. 2d 903 (S.D. Ohio 2004)............32

*United States v. Freidin*, 849 F.2d 716 (2d Cir. 1988) ................................................................10

## TABLE OF AUTHORITIES
(Continued)

**Page(s)**

*United States v. Manshul Construction Corp.*, No. 93 Civ. 0308 (JGK)(THK), 1996
WL 267945 (S.D.N.Y. May 20, 1996) ...................................................................11

*Webb v. Midland Credit Mgmt., Inc.*, No. 11 Civ. 5111, 2012 WL 2022013 (N.D. Ill.
May 31, 2012) ........................................................................................................18

*Westmoreland v. Sadoux*, 299 F.3d 462 (5th Cir. 2002)....................................................20

*Wyles v. Excalibur I, LLC*, No. 05 Civ. 2798, 2006 WL 2583200 (D. Minn. Sept. 7,
2006) ......................................................................................................................32

*Yoon v. Fordham Univ. Faculty & Admin. Ret. Plan*, 263 F.3d 196 (2d Cir. 2001) ...................12

### STATUTES AND RULES

9 U.S.C. § 4....................................................................................................................5, 27

15 U.S.C. §§ 1601 *et seq.* ............................................................................... *passim*

18 U.S.C. §§ 1691 *et seq*...........................................................................................1, 3, 33

Fed. R. Civ. P. 12(1) ...........................................................................................................1

Fed. R. Civ. P. 12(6) ...........................................................................................................1

Fed. R. Evid. 803(6)............................................................................................................9

New York General Business Law...............................................................................1, 3, 33, 34

New York Judiciary Law.................................................................................................1, 3

### TREATISES AND PERIODICAL MATERIALS

Restatement (Second) of Agency, § 1 (1958)...........................................................................19

## PRELIMINARY STATEMENT

Plaintiffs Betty Bernhart, Fausto Brito, Charles Roberts, and Jorge Viruet bring this action on behalf of themselves and other similarly situated individuals who were injured by Defendants' scheme to fraudulently obtain and enforce consumer debt judgments worth millions of dollars, in violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1601 *et seq.* (the "FDCPA"), the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1691 *et seq*. ("RICO"), New York General Business Law section 349, and New York Judiciary Law section 487.

Plaintiffs respectfully submit this memorandum in opposition to the motions brought by Defendants Asta Funding, Inc. ("Asta"), Palisades Collection, LLC ("Palisades Collection"), and Gary Stern ("Stern") (together, the "Asta Defendants"), and joined by Defendants Pressler & Pressler, LLP ("Pressler"), Richard A. Franklin, Ralph Gulko, and Mitchell E. Zipkin (together, the "Pressler Defendants"), to compel arbitration and for related relief.  Specifically, Plaintiffs oppose Defendants' motions to: (1) compel Plaintiffs Roberts and Viruet to arbitrate their claims rather than pursue them in this litigation; (2) stay this litigation pending the conclusion of arbitration proceedings involving any Plaintiffs; and (3) in the alternative, dismiss Mr. Viruet's claims under Fed. R. Civ. P. 12(1) for lack of subject-matter jurisdiction and under Fed. R. Civ. P. 12(6) for failure to state a claim upon which relief can be granted.  Defendants also seek "limited discovery as to the arbitrability" of the claims of Plaintiffs Bernhart and Brito (Mem. in Supp. of Mot. to Compel Arbitration and for Related Relief 1 ("Def. Mem.").

The Court should deny Defendants' motion to compel arbitration.  Defendants have not met their burden to establish that either Mr. Roberts or Mr. Viruet entered binding agreements to arbitrate with any party, nor have they even identified the terms of any such agreements—instead moving on the basis of "example" agreements purportedly entered by individuals who are not

parties to this action.  (Def. Mem. 4.)  Moreover, even if Defendants could prove that Plaintiffs

were bound by any of the example agreements, those agreements plainly exclude from

mandatory arbitration claims relating to "collections," like Plaintiffs' here.  Finally, Defendants

have not established that they, as non-signatories to any agreements Plaintiffs may have entered,

can enforce those agreements' arbitration provisions.

If the Court does not deny with prejudice Defendants' motion to compel, Plaintiffs are

entitled to a hearing to resolve disputed issues of fact, following appropriate discovery.  As to

Defendants' request for unidentified discovery, Plaintiffs will respond once Defendants serve

any requests.

The Court also should deny Defendants' motion, in the alternative, to dismiss Mr.

Viruet's claims.  His claims are not barred by the Rooker-Feldman doctrine because Mr. Viruet's

injuries were caused by Defendants' misconduct, not the state-court judgment against him, and

because he is not seeking "reversal" of that judgment.  Similarly, Mr. Viruet's claims are not

barred by claim preclusion because the state-court action concerned whether he owed a debt,

whereas these claims concern Defendants' misconduct in litigation to collect the debt.

## BACKGROUND

Plaintiffs brought this suit against Defendants seeking relief from injuries caused by

Defendants' scheme to wrongfully obtain and enforce consumer debt judgments against New

York City consumers.  In 2004, Asta and Palisades Collection began purchasing consumer

telecommunications debt from AT&T Wireless.  (Am. Compl. ¶ 3.)  Asta and Palisades

Collection are "debt buyers"; they buy defaulted, charged-off debts for pennies on the dollar, and

then seek to collect the full face value of the debts for profit.  (*Id.* ¶ 25.)  At the time of these

purchases from AT&T, Asta and Palisades Collection obtained only skeletal information about

the debts, and no underlying account documentation at all.  (*Id.* ¶¶ 38, 42.)  By 2005, Asta and

Palisades Collection, at the direction of Stern, had implemented a "legal strategy" to collect on debts like those from AT&T Wireless by commencing mass litigation.  (*Id.* ¶¶ 49-51.)  The Asta Defendants retained Pressler & Pressler to initiate thousands of lawsuits against New York City consumers to collect the AT&T Wireless debts.  (*Id.* ¶¶ 53, 57.)

In the course of commencing, litigating, and collecting through these suits, the Pressler Defendants and the Asta Defendants repeatedly violated the FDCPA, RICO, the New York General Business Law, and the New York Judiciary Law.  (*Id.* ¶¶ 488-543.)  Defendants initiated these suits without having, being able to, or intending to obtain the evidence necessary to prove their claims (*id.* ¶¶ 83-85); the Pressler Defendants filed thousands of baseless "verified" complaints, and failed to notify consumers of the lawsuits (*id.* ¶¶ 57-69, 100, 114, 118); Palisades Collection submitted fraudulent affidavits in support of default judgment applications (*id.* ¶¶ 118-19); and Defendants used (and continue to use) those judgments to improperly seize consumers' wages and assets (*id.* ¶¶ 135-36, 139), among other misconduct.  Through these tactics, Defendants have unlawfully collected millions of dollars from consumers.  (*Id.* ¶¶ 1, 4.)

Plaintiffs Bernhart, Brito, Roberts, and Viruet are four individuals injured by Defendants' scheme.  None owed money to AT&T Wireless, yet Defendants obtained default judgments against each on the basis of fraudulent affidavits.

**Viruet**.  In late 2012, Mr. Viruet's employer received an order directing it to withhold Mr. Viruet's wages to satisfy a default judgment on behalf of Palisades Collection against "Jorge Virueto," which is not Mr. Viruet's name and which he has never used.  (Viruet Decl. ¶¶ 2-3.)  Before that time, Mr. Viruet had not heard anything about a supposed judgment against him in favor of Palisades Collection.  (*Id.* at ¶ 4.)  Indeed, Mr. Viruet was never served with notice of the lawsuit by any method.  (*Id.* at ¶ 5.)  Mr. Viruet moved to vacate the judgment but the court

denied his motion.  (Am. Compl. ¶¶ 467, 479, 481.)  He never opened any account with AT&T

Wireless and did not owe any money to AT&T Wireless.  (*Id.* at ¶ 6.)  When he did have

personal cell service, it was not through AT&T.  (*Id.* at ¶ 7-8.)

**Roberts**.  Around August 2012, Mr. Roberts discovered that his Chase Bank savings

account containing approximately $3,000 had been restrained to satisfy a judgment supposedly

owed to Palisades Collection.  (Roberts Decl. ¶ 2.)  Before that time, he had not heard anything

about a supposed judgment against him in favor of Palisades Collection.  (*Id.* at ¶ 3.)  He was

never served with notice of the lawsuit by any method.  (*Id.* at ¶ 4.)  Mr. Roberts moved to vacate

the judgment; Palisades Collection discontinued the case before the motion was finally

adjudicated. (Am. Compl. ¶¶ 407, 415, 417.)  Mr. Roberts has no recollection of having had a

cellular phone account with AT&T.  (Roberts Decl. ¶ 5.)  Indeed, when Mr. Roberts recently

contacted AT&T Wireless Customer Service, AT&T failed to locate any account under his name

or social security number after searching databases of all accounts opened as far back as AT&T

has offered wireless services.  (*Id.* ¶ 11.)

**Brito and Bernhart**.  As to Plaintiffs Brito and Bernhart, Defendants seek discovery to

determine if they had AT&T accounts at all—notwithstanding that Defendants obtained default

judgments against Mr. Brito and Ms. Bernhart on the basis of sworn representations that

Defendants could prove that Mr. Brito and Ms. Bernhart had accounts.

For the reasons set forth herein, Defendants' motions must be denied.

<u>**ARGUMENT**</u>

I.     **THIS COURT SHOULD DENY DEFENDANTS' MOTION TO COMPEL ARBITRATION BECAUSE DEFENDANTS HAVE NOT MET THEIR BURDEN TO SHOW THAT PLAINTIFFS AGREED TO ARBITRATE THIS DISPUTE.**

   **A.     Defendants Bear The Burden Of Establishing That Plaintiffs Agreed To Arbitrate This Dispute.**

"The threshold question facing any court considering a motion to compel arbitration is . . . whether the parties have indeed agreed to arbitrate." *Schnabel v. Trilegiant*, 697 F.3d 110, 118 (2d Cir. 2012).  Arbitration "is a matter of consent, not coercion." *Ross v. Am. Express Co.*, 547 F.3d 137, 143 (2d Cir. 2008) (quotation marks omitted).  Agreements to arbitrate are "as enforceable as other contracts, but not more so." *Dreyfuss v. eTelecare Global Solutions-U.S. Inc.*, 349 F. App'x 551, 553 (2d Cir. 2009) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967) (quotation marks omitted)).  The law "requires that parties actually agree to arbitration before it will order them to arbitrate a dispute." *Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 369 (2d Cir. 2003).

Defendants, as the parties seeking to compel arbitration here, "bear[] the burden to establish that a binding agreement was made and to prove the terms" of that agreement. *Dreyfuss*, 349 F. App'x at 555 (quotation marks omitted).  To compel arbitration, Defendants "must make a prima facie initial showing that an agreement to arbitrate existed"; otherwise, their motion must be denied. *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010).

Even if Defendants make the initial showing, Plaintiffs may put the existence of that agreement "in issue" by raising factual disputes. *Id.*  Courts evaluating motions to compel arbitration apply a standard similar to that applicable to a motion for summary judgment. *See Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir. 2003).  Thus, if a genuine issue of material fact exists, Plaintiffs are entitled to a trial. *Id.*; *see also* 9 U.S.C. § 4.  Facts and ambiguities must

be viewed in a light most favorable to Plaintiffs, the non-moving party.  *See Darrah v. Friendly Ice Cream Corp.*, 328 F. Supp. 2d 319, 321 (N.D.N.Y. 2004).

    **B.**    **Defendants Have Not Established That Any Plaintiff Agreed To Arbitrate.**

    Defendants contend that this Court should compel Plaintiffs Roberts and Viruet to arbitrate their claims on the basis of their supposed agreements to arbitrate these disputes. Defendants, however, have submitted no competent evidence to establish that either Plaintiff entered an agreement to arbitrate.  Because Defendants have not met their burden "to establish that a binding agreement was made and to prove [its] terms," the Court must deny their motion. *Dreyfuss*, 349 F. App'x at 554-55.

    **1.**    **Defendants Fail to Identify Any Supposedly Applicable Contracts.**

    First, Defendants have failed even to *identify* the contracts they assert each Plaintiff entered, much less establish by competent evidence that each did so.  Defendants assert that the accounts in Mr. Roberts's and Mr. Viruet's names were "subject to the terms of the Account Agreements" (Def. Mem. 3), but they submit no declaration, from an AT&T Wireless employee or anyone else, providing or even purporting to identify those agreements.  Instead, Defendants cite four Affidavits submitted in other court proceedings, involving individuals who are not parties here.[1]  Each Affidavit states that *the individual(s) involved in that proceeding* opened AT&T Wireless accounts governed by the terms in the attached "guides," but states nothing regarding Mr. Roberts or Mr. Viruet.

    Each of the four versions of these guides—all supposedly in use within a couple of years—differs from the others in meaningful respects.  For example, one extends the arbitration

---

1.  (*See* Lederer Decl. Ex. 1 ¶¶ 9-10, ECF No. 39-1 ("Jordana Decl.") (attaching a Terms and Conditions version published in 2002 and purportedly distributed in either April or June 2002), Ex. 2 ¶ 3, ECF No. 39-2 ("Van Hise Aff.") (version published in 2001; purportedly distributed in Sept. 2001), Ex. 3 ¶¶ 2-3, EF No. 39-3 ("Tucker Aff.") (version purportedly distributed in Oct. 2002; unclear publication date), Ex. 4 ¶ 4, ECF No. 39-4 ("Younger Aff.") (version published in 1999; purportedly distributed in Jan. 2003).)

provision to disputes between the customer and the "subsidiary, parent, or affiliate companies" of the AT&T entity operating in the customer's area (Tucker Aff. Ex. A, at 32, 24), while others contain no such language (Younger Aff. at 25, 31). One version provides that the customer and AT&T will split arbitration fees equally for all claims over $1,000 (*see* Van Hise Aff. Ex. A, at 30), while others limit a customer's arbitration fees for claims between $1,000 and $10,000 to the equivalent of a court filing fee (*see* Jordana Decl. Ex. 1, at 41). Moreover, it appears that other versions of the "Welcome Guides," which Defendants have not submitted, also were in use during this period.[2]

Defendants do not even assert—much less prove—which version, produced or unproduced, governs the accounts they say were opened in Mr. Roberts's and Mr. Viruet's names. Instead, Defendants offer "example" language governing accounts of non-parties. (*See* Def. Mem. 4.) They then urge this Court to deprive Plaintiffs here of their right to litigate these disputes on the basis of those other people's agreements.

This does not meet Defendants' obligation to establish that the parties *to this suit* "actually agree[d] to arbitration." *Opals*, 320 F.3d at 369. In New York, as elsewhere, "a court cannot enforce a contract unless it is able to determine what in fact the parties have agreed to." *Dreyfuss v. eTelecare Global Solutions-U.S. Inc.*, No. 08 Civ. 1115, 2008 WL 4974864, at *4 (S.D.N.Y. Nov. 19, 2008) (quotations omitted), *aff'd*, 349 F. App'x 551 (2d Cir. 2009). A party must identify a "sufficiently definite" contract to obtain enforcement. *Id.* In making that determination, a court must give the party resisting arbitration "the benefit of all reasonable doubts and inferences that may arise." *Id.* at *3.

---

2.   *See, e.g.*, Berinhout Decl., Ex. 10, *Crandall v. AT&T Mobility, LLC*, No. 07 Civ. 750 (S.D. Ill. Jan. 11, 2008) (Dkt. No. 11) (August 2003 Welcome Guide); Bonina Aff., Ex. A, *Mtume v. AT&T Wireless Servs., Inc.*, No. 05 Civ. 5218 (D.N.J. Nov. 7, 2005) (Dkt. No. 3) (November 2002 Welcome Guide); Philips Decl., Ex. A, *Schafer v. AT&T Wireless Svcs., Inc.*, 04 Civ. 4149 (S.D. Ill. Sept. 13, 2004) (Dkt. No. 14) (April 2003 Welcome Guide).

In *Dreyfuss*, the Second Circuit found that even a far more substantial showing than Defendants' here fell short of the movant's burden to establish the existence of an arbitration agreement. 349 F. App'x at 554. The party seeking arbitration claimed that the plaintiff signed an employment agreement mandating arbitration, and produced its first page (containing an arbitration clause) and signature page, but not the page(s) in between. *Id.* at 552. As in this case, the defendant used several arbitration agreements—not a "single standard document"—during the relevant period. *Id.* at 552-53. The Court held that the defendant had not established an "enforceable agreement" to arbitrate. *Id.* at 553-54. "[Defendant] cannot demonstrate [plaintiff's] assent to an entire range of matters relevant to the conduct of arbitration proceedings. . . . [Defendant therefore] cannot meet its burden of showing that the meeting of the minds necessary for the existence of an enforceable contract took place." *Id.* at 554.

The Second Circuit rejected a similar effort in *Opals.* 320 F.3d at 362. In that case, although both parties had signed documents containing arbitration provisions, the party seeking to enforce the arbitration provision could not prove that both parties signed the *same* document. *Id.* at 365-66. The version signed by one party called for arbitration in New York; the other for arbitration in California. *Id.* at 371-72. Despite each party having manifested an intent to arbitrate, the Court refused to mandate arbitration, because the differences in the contracts each signed were "significant" and the party seeking arbitration had not demonstrated a "meeting of the minds." *Id.* at 372; *see also Hallmark v. Cohen & Slamowitz, LLP*, No. 11-CV-842S, 2013 WL 5178128, at *4 (W.D.N.Y. Sept. 16, 2013) (rejecting debt collector's reliance on partial credit card agreement where "no indication" that customer signed it).

Here, Defendants have provided much less evidence than what was provided in either *Opals* or *Dreyfuss*; Defendants have identified nothing at all linking Plaintiffs to any specific

agreement.  Defendants' motion to compel arbitration fails on that basis alone.

> **2.      Defendants' "Evidence" Is Incompetent Even to Establish that Mr. Roberts and Mr. Viruet Had AT&T Wireless Contracts.**

Not only have Defendants failed to identify or prove the contents of either Plaintiff's account agreement, they have not even established that either opened AT&T Wireless accounts in the first instance.  Their "evidence" is incomprehensible, incompetent, and inadmissible.

Defendants contend that accounts "were opened" in Mr. Roberts's and Mr. Viruet's names "[b]etween April 2002 and March 2003."  (Def. Mem. 2.)  In support of Defendants' assertion, they cite the Declaration of Seth Berman, General Counsel to Asta and Palisades.[3]  *Id.* Mr. Berman states that Palisades purchased accounts "that had been opened [with AT&T Wireless] in the names" of the Plaintiffs; that AT&T Wireless "transferred electronic and other records to Palisades," including "Text files" identifying the accounts; that the data was in a format that is not understandable, but which "can be converted"; and that Exhibits 2-6 to his Declaration contain "data from the[se] Text files."  (Berman Decl. ¶ 5.)  These incomprehensible documents consist of various codes and fields (for example, "DIVISION_ID_CLIENT_ID").  Defendants apparently rely on the fact that one field, labeled "CONTRACT_DATE," contains a date to support their contention that Plaintiffs Roberts and Viruet opened accounts with AT&T Wireless.  (*See* Def. Mem. 2.)

Defendants offer no competent evidence supporting this interpretation of these ambiguous documents.  Even if Defendants had established that this understanding was correct, however, the documents are inadmissible hearsay.  To admit a record under the business records exception to the hearsay rule, the propounding party must establish, through the "testimony of

---

3.   The Declaration of Seth Berman concedes that no account was opened in Mr. Viruet's name; instead, an account was opened in the name "Jorge Virueto," which is not Mr. Viruet's name and which he has never used.  (Viruet Decl. ¶ 3.)

the custodian or another qualified witness," that (1) the record was "kept in the course of a regularly conducted activity of a business;" (2) it was the business activity's "regular practice" to make the record; (3) the record was made "at or near the time" of the documented event; and (4) "neither the source of information nor the method or circumstances of preparation indicate lack of trustworthiness."  Fed. R. Evid. 803(6); *see also United States v. Freidin*, 849 F.2d 716, 719-20 (2d Cir. 1988).

Defendants' submission meets none of these criteria.  Mr. Berman does not state, and is not competent to state, that the data in the Text files was maintained by AT&T in the normal course of business; that it was AT&T's regular practice to create such records; or that the record was made contemporaneously with any account opening.  Although Mr. Berman need not have been employed by AT&T when the records were created, "he must be able to vouch from personal knowledge of the recordkeeping system that such records were kept in the regular course of business."  *Dell Pub. Co. v. Whedon*, 577 F. Supp. 1459, n.5 (S.D.N.Y. 1984). Because Mr. Berman does not state that he has any familiarity at all with AT&T's business practices, he is not a "qualified witness" to establish the "foundational element" of the records' admissibility.  *Ortho Pharmaceutical Corp. v. Cosprophar, Inc.*, 828 F. Supp. 1114, 1120 (S.D.N.Y. 1993).  Nor does Mr. Berman explain how or by whom the data was extracted for Palisades (or how that activity, which is unrelated to providing wireless telephone services, is part of AT&T's normal course of business); when and how Palisades acquired the files; how Palisades maintained them, in the course of its regular business or not; and how Palisades "converted" the data to the form in which it was submitted to the Court.

Courts have rejected putative business records because of far less significant deficiencies. In *Ortho*, for example, the witness could not lay a foundation for reports created by his own

department because he did not "elaborate[e] on procedure, methodology, or accountability." 828

F. Supp. at 1119-20 & n.9 (witness had not seen original data, did not know creators' "methods

of preparation," did not indicate how reports were part of "regular course" of business, and could

not explain efforts at consistency among reports).  Likewise, in *United States v. Manshul*

*Construction Corp.*, the proponent could not introduce documents prepared by a third party

because it did not demonstrate "when the underlying documents were created, whether the

individual responsible had personal knowledge of the amounts in question, or whether the

documents were kept in the ordinary course of [the third party's] business."  No. 93 Civ. 0308

(JGK)(THK), 1996 WL 267945, at *6 (S.D.N.Y. May 20, 1996); *see also Potamkin Cadillac*

*Corp. v. B.R.I. Coverage Corp.*, 38 F.3d 627, 633 (2d Cir. 1994) (affirming exclusion of

extracted data where no showing that original computer data was compiled as regular business

practice); *Polygram Merch., Inc. v. N.Y. Wholesale Co*., No. 97 Civ. 6489 (HB), 1998 WL

386437, at *2 n.1 (S.D.N.Y. 1998) (excluding documents "prepared from the database of a third

party" because no evidence of reliability of party's sources); *Dell Pub. Co.*, 577 F. Supp. at 1464

n.5 (excluding document because custodian did not know author's record-keeping practices);

*Kasper Global Collection & Brokers, Inc. v. Global Cabinets & Furniture Mfrs. Inc.*, No. 10

CIV. 5715 (DF), 2013 WL 3388427, at * 23 (S.D.N.Y. July 1, 2013) (similar).

      Courts repeatedly have rejected Palisades's attempts to introduce similar files as business

records.  In *Palisades Collection LLC v. Kedik*, the court affirmed the exclusion of "an electronic

spreadsheet listing defendant's . . . account as one of the accounts sold to [Palisades]," because

the Palisades employee "did not establish that he was familiar with plaintiff's business practices

or procedures, and he further failed to establish when, how, or by whom the electronic

spreadsheet submitted in paper form was made."  890 N.Y.S.2d 230, 231 (4th Dep't 2009)

(applying New York business records exception, which also requires that person with knowledge establish that records were kept in ordinary course of business); *see also Palisades Collection LLC v. Gonzalez*, 809 N.Y.S.2d 482 (City Civ. Ct. 2005) (excluding AT&T Wireless documents because Palisades witness was not "familiar with AT&T's record keeping practices" and records were not as described); *Palisades Collection LLC v. Haque*, No. 64375/05, 2006 N.Y. Misc. LEXIS 4036, at *4-5 (Civ. Ct. Qu. Cty. Apr. 13, 2006) (similar).  As in those cases, the evidence offered here is inadmissible.  Accordingly, Defendants' motion to compel arbitration must be denied.[4]

### 3. Defendants Fail to Establish that Mr. Roberts and Mr. Viruet Accepted any Terms and Conditions.

Even if Defendants had proved that Plaintiffs Roberts and Viruet opened AT&T Wireless accounts and received specific terms containing arbitration provisions—which Defendants have not done—Defendants have not established that Plaintiffs accepted those terms.

To be deemed to have agreed to an arbitration provision, a consumer must have been put on notice of the term and then manifested his assent to it.  *See Hines*, 380 F. App'x at 24-25. Here, Defendants have not established that Mr. Roberts or Mr. Viruet was notified of the terms and conditions of their purported AT&T accounts.  Even if any of Defendants' Affidavits applied to Mr. Roberts or Mr. Viruet, those state that customers received terms and conditions placed (by phone manufacturers, not AT&T) inside new phone packages (*see, e.g.*, Jordana Decl. ¶¶ 3, 5), but Defendants swore in their debt collection actions against Plaintiffs that any agreements

---

4.   With respect to Mr. Viruet, Defendants also claim offhandedly that the default judgment against him in Palisades's collection action establishes that he was an account holder.  (Def. Mem. 7-8 n.3.)  If Defendants are suggesting that the default judgment has issue preclusive effect on whether Mr. Viruet held an AT&T Wireless account, that argument fails.  "[T]he general rule is well-established that default judgments lack issue-preclusive effect." *In re Adler, Coleman Clearing Corp*., 205 F. App'x 856, 857 (2d Cir. 2006). "[U]nder New York law, collateral estoppel forecloses only those issues that have been actually litigated . . . and an issue is not actually litigated if there has been a default." *Yoon v. Fordham Univ. Faculty & Admin. Ret. Plan*, 263 F.3d 196, 202 n.7 (2d Cir. 2001) (quotation marks and alterations omitted).

governing their accounts were *mailed*.[5]  *See Schnabel*, 697 F.3d at 120-29 (affirming denial of motion to compel for failure to prove plaintiff received notice of arbitration provision).

Nor have Defendants established Mr. Roberts's or Mr. Viruet's assent to any terms and conditions.  The sample terms provide that "us[ing] the service or device," *inter alia*, manifests assent to the terms supplied therein.  (*See, e.g.*, Van Hise Aff. Ex. A, at 7.)  Defendants assert that "the users" of the accounts in Plaintiffs' names "utilized the services provided, making and receiving numerous phone calls," and that this utilization manifested Mr. Roberts' and Mr. Viruet's assent to the (unidentified) terms and conditions.  (Def. Mem. 3.)

To support this claim, Defendants cite documents that Mr. Berman calls "account statements," which he claims Palisades "also obtained" from AT&T Wireless.  (Berman Decl. ¶ 6.)  But these documents do not indicate any specific utilization or the making or receiving of any calls at all—they merely list total sums allegedly owed by the accountholders.  *Id*. Exs. 10-11.  In any event, for the reasons described above, these documents are inadmissible hearsay.  Indeed, several courts have questioned the identity, authenticity, admissibility, and relevance of precisely these documents.  *See, e.g.*, *Gonzalez*, 809 N.Y.S.2d 482 at *2 (documents Palisades affiant described as AT&T Wireless "account statements" plainly were not, and appearance of documents showed they were not mailed to customer); *Haque*, 2006 N.Y. Misc. LEXIS 4036 at *4-5 (Palisades agent admitted that "account summary" was not actually sent to customer, and court refused to admit it).  Defendants' failure to show assent to the arbitration agreement also is fatal to their motion.  *See Hines*, 380 F. App'x at 24-25 (mere allegation that consumer assented, without showing of fact, insufficient to support motion to compel).

---

5.  (*See* Tarantolo Decl. Ex. 3, Verified Compl. ¶ 4 (Feb. 16, 2006), *Palisades Collection LLC v. Roberts*, N.Y. Civ. Ct. Index No. CV-17437-06/BX; *Id.*, Ex. 4, Affidavit of Facts ¶ 3 (Nov. 29, 2006), *Palisades Collection LLC v. Roberts*, N.Y. Civ. Ct. Index No. CV-17437-06/BX; *Id.*, Ex. 5, Verified Compl. ¶ 4 (June 5, 2006), *Palisades Collection LLC v. Virueto*, N.Y. Civ. Ct. Index No. CV-50882-06/BX; *Id.*, Ex. 6, Affidavit of Facts ¶ 3 (Sept. 17, 2006), *Palisades Collection LLC v. Virueto*, N.Y. Civ. Ct. Index No. CV-50882-06/BX.)

### C.    All of the "Example" Terms and Conditions Plainly Exclude Plaintiffs' Collections-Related Claims From Mandatory Arbitration.

Even if Defendants had established that any Plaintiff was an accountholder bound by identifiable terms—they have not—all of the "example" arbitration clauses they provide plainly entitle Plaintiffs to elect to litigate the claims in this case.  Each example excludes from mandatory arbitration claims that, like those brought here, relate to debt collection—precisely the exception on which Defendants relied when they sued Plaintiffs in court to collect purported debts and committed the misconduct alleged in the Amended Complaint.

*All* of the terms and conditions Defendants submitted with their motion plainly exclude claims relating to debt collection.  One full provision states:

> a. Binding Arbitration. This provision is intended to be interpreted broadly and encompass all disputes or claims arising out of our relationship. Any dispute or claim, including those against any of our subsidiary, parent, or affiliate companies, arising out of or relating to this Agreement, our Privacy Service (whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory) will be resolved by binding arbitration *except that* (1) you may take claims to small claims court if they qualify for hearing by such a court, or (2) *you or we may choose to pursue claims in court if the claims relate solely to the collection of any debts you owe to us*.

(Jordana Decl. Ex. 1, at 40 (emphasis added).)  Notably, every sample Defendants have provided contains the precise language in italics.  (*See, e.g.*, Def. Mem. 4 (citing same language in terms attached to Van Hise Aff.).)

The Court must give effect to this "clear and unambiguous" exclusionary clause.  *State of N.Y. v. Oneida Indian Nation of N.Y.*, 90 F.3d 58, 62 (2d Cir 1996).   "[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986).  Accordingly, where, as here, "the parties to an arbitration agreement specifically have excepted a certain type of claim

from mandatory arbitration, it is the duty of courts to enforce not only the full breadth of the arbitration clause, but its limitations as well." *Oneida*, 90 F.3d at 62.

Here, the arbitration provision on its face permits the parties to elect to pursue claims in court if "the claims relate solely to the collection of any debts you owe to us." (Jordana Decl. Ex. 1, at 40.) "In determining whether a particular claim falls within the scope of the parties' arbitration agreement," courts must "focus on the factual allegations in the complaint." *Oneida*, 90 F.3d at 61 (quotation marks omitted). The claims in the Amended Complaint plainly "relate solely to the collection of debts" purportedly owed to AT&T Wireless. All of Defendants' alleged misconduct—filing baseless complaints and fraudulent affidavits, among other things— occurred in the course of litigation to collect debts purportedly owed to AT&T Wireless.[6] (*See* Am. Compl. ¶¶ 3, 49-161.) Indeed, all of the alleged conduct occurred after Palisades acquired defaulted accounts solely for the purpose of collecting them. (*See id.* ¶¶ 25-26, 35, 53.) The "collection of debts" exception clearly applies here.

Defendants cannot argue that the clause extends only to suits that seek to collect debts, because that construction contradicts the provision's plain language. First, such an interpretation would strip the term "relat[ing] . . . to" from the provision, making it "claims *for* the collection of any debts" instead. The term "relating to" is "classically broad," even broader than terms like "arising out of," and is intended to cover anything "connected by reason of an established or discoverable relation" to the term it modifies. *In re Spiegel Inc.*, No. 03-11540, 2006 WL 2577825, at *10 n.4 (Bankr. S.D.N.Y. Aug. 16, 2006) (quotation marks omitted).

Second, a limited reading of the exception would eliminate the provision's expressly bilateral nature: "*you or we* may choose to pursue claims in court if the claims relate solely to the

---

6.   The term "the collection of debts" in the arbitration provision includes debt collection litigation. *Cf. Heintz v. Jenkins*, 514 U.S. 291, 292-95 (1995) (holding that the term "debt collector" in the FDCPA applies to a lawyer who regularly, through litigation, tries to collect consumer debts).

collection of any debts you owe to us."  This clear and unambiguous language allows both

parties to litigate claims "relate[d] to debt collection," whereas only AT&T could bring *claims to*

*collect* debts owed to AT&T.  AT&T is a sophisticated party; it could have limited the exception

to "claims to collect debts" or drafted a unilateral provision if it wanted to.  Importantly,

notwithstanding any abstract policy favoring arbitration, courts must not impose a meaning on

exclusionary clauses that is inconsistent with the entire provision or with the parties' intent.  *See*

*Oneida*, 90 F.3d at 62-63.  Courts "[must] not don blinders to the[] obvious meaning [of an

exclusionary clause] and thereby thwart the reasonable expectations of the parties." *Id.* at 62.

Nor can Defendants argue that an interpretation of the exception that covers the instant

claims would render it unnecessarily broad or swallow the entire provision.  Myriad lawsuits

brought by accountholders against AT&T involve disputes arising out of those accountholders'

relationships that do *not* relate to collection of debt, and therefore would not fall within the

exception.[7]

Finally, to permit Defendants to invoke the exception when they wish to sue customers in

court, but not permit those customers to invoke the same exception when Defendants engaged in

unlawful conduct while bringing those suits, would be patently unfair.  *Cf. Sherrill v. Grayco*

*Builders, Inc.*, 64 N.Y.2d 261, 272 (1985) (party's litigation activity waived right to arbitrate).

Even if Defendants were able to show that any of the sample terms and conditions they

have submitted actually applied to these Plaintiffs, those terms exclude Plaintiffs' claims from

arbitration.  Defendants' motion to compel thus should be denied based on the exclusionary

---

7.  *See, e.g.*, *Penberthy v. AT&T Wireless Servs. Inc.*, 354 F. Supp. 2d 1323 (M.D. Fla. 2005) (alleged violation of
federal privacy of consumer information law arising out of AT&T's purported unauthorized dissemination of
accountholder's information); *Mtume v. AT&T Wireless Servs., Inc.*, 2006 U.S. Dist. LEXIS 3607 (D.N.J. Feb.
1, 2006) (state law consumer fraud action arising out of forced migration to a more expensive Cingular plan
following merger); *Heiko Law Offices, P.C. v. AT&T Wireless Servs., Inc.*, 800 N.Y.S.2d 347 (Sup. Ct. N.Y.
Feb. 22, 2005) (breach of contract and fraud action arising out of service failures and unauthorized charges);
*Fonte v. AT&T Wireless Servs., Inc.*, 903 So.2d 1019 (Fla. Dist. Ct. App. 2004) (state law consumer fraud
action arising out of unilateral change of customer rate plans).

clause in the arbitration provision.

**D.    Defendants, As Non-Signatories, Cannot Invoke The Arbitration Provision Against Plaintiffs.**

Even if Defendants could show that Plaintiffs entered into applicable arbitration agreements with AT&T Wireless—they have not—Defendants have not established that they, as non-signatories, can invoke such provisions to force Plaintiffs into arbitration.  Defendants have not established that Palisades Collection can enforce the provision as an assignee of AT&T Wireless, or that the other Defendants can enforce it as Palisades Collection's Agent or under principles of equitable estoppel.

**1.    Defendants Cannot Establish That Palisades Collection Is Assignee of AT&T's Rights to Plaintiffs' Accounts.**

As a threshold matter, Defendants cannot enforce any arbitration provision because they have failed to establish Palisades Collection's chain of title to Plaintiffs' specific accounts. Defendants proffer a Purchase and Sale Agreement they claim assigned the Roberts and Viruet accounts to Palisades Collection.  (*See* Def. Mem. 10 (citing Berman Decl. Ex. 1).)  The Bill of Sale attached to that document reflects a single assignment on July 19, 2004 (*see* Berman Decl. Ex. 1, at 31), but the Text files Mr. Berman claims relate to those accounts contain "IMPORTSTAMP" fields suggesting that both were transferred months later.  (*See id*. ¶ 5, Exs. 5-6 (1/28/05 and 7/9/05).)  Whether or not that interpretation of the text files is accurate, Defendants have done nothing to link *these* accounts to the sole Bill of Sale they provide.  (*See id*. Ex. 1 ¶¶ 1.1, 2.1.)

As Defendants have not met their burden to prove that Plaintiffs' purported accounts were assigned to Palisades, their motion must be denied.  *See, e.g., Webb v. Midland Credit Mgmt., Inc.*, No. 11 Civ. 5111, 2012 WL 2022013, at *5 (N.D. Ill. May 31, 2012) (without bill of sale and other documents evidencing assignment of account, debt buyer defendants "cannot

show an unbroken chain of assignment entitling them to stand in Citibank's shoes and enforce the arbitration provision contained in Webb's credit card agreement"); *see also LVNV Funding LLC v. Guest*, 953 N.Y.S.2d 550, at *6 (City Ct. 2012) ("Under New York law, a full chain of assignment . . . is required in order to prove a prima facie case in a consumer debt action where the plaintiff is an assignee of the original creditor."); *In re Taranto*, No. 10-76041, 2012 WL 1066300, at *9 (Bankr. E.D.N.Y Mar. 27, 2012) (New York law requires claimant to prove chain of assignment *for each specific account*)).

## 2.   Neither The Pressler Defendants Nor Asta and Stern Have Established That They Can Enforce the Arbitration Provision As Palisades's Agents.

Even if the Court determined that Palisades Collection has established entitlement to enforce any arbitration provision as AT&T's assignee, the remaining Defendants—who are not assignees—have not established that they too are entitled to enforce it.

New York law permits a non-signatory to an arbitration agreement to enforce the agreement against a signatory *only* where contract and/or agency principles permit.  *See Thomson-CSF v. Am. Arbitration Ass'n*, 64 F.3d 773, 776-79 (2d Cir. 1995).  The non-signatory movant must provide "documentary or other evidence to substantiate its claim" to enforce the agreement.  *Overseas Oil Transp. Corp. of Panama v Phibro Energy A.G.,* 1989 A.M.C. 847. 850 (S.D.N.Y. Feb. 1, 1989).  Here, Plaintiffs cannot be compelled to arbitrate, because Defendants have failed even to attempt the requisite "*full* showing of some accepted theory under agency or contract law." *See Thomson-CSF*, 64 F.3d at 780.[8]

---

8.   Neither the Pressler nor the Asta Defendants have established that the terms and conditions apply to them as a matter of pure contract interpretation.  The sample arbitration clauses Defendants submitted purport to bind the customer and AT&T Wireless, as well as — in some but not all of the versions — certain companies affiliated with AT&T Wireless.  (*Compare* Jordana Decl. Ex. 1 at 35 (arbitration provision includes claims "against any of our subsidiary, parent or affiliate companies"), Van Hise Aff. at 24 (same), Tucker Aff. at 27 (same) *with* Younger Aff. at 24 (no such language)).  This distinction alone creates an issue of fact as to the rights and expectations of the parties with respect to the arbitration agreement's scope.  Moreover, even if Defendants

The Pressler Defendants have not (and could not) claim that they acted as agents of AT&T Wireless.  Nor have they established that they are entitled to invoke any arbitration provision as agents of Palisades Collection, even assuming that were sufficient.  Agency "is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 130 (2d Cir. 2003) (quoting Restatement (Second) of Agency, § 1 (1958)).  "[T]he formation of an agency relationship requires the consent of both parties."  *Tellium, Inc. v. Corning Inc.*, 2004 U.S. Dist. Lexis 2289, at *16 (S.D.N.Y. Jan. 15, 2004).  Here, the Asta Defendants have expressly denied that the Pressler Defendants acted as their agents at all, or within the scope of any agency.  (*See* Asta Defs.' Ans. at 63, ¶ 17.)  This is fatal to Pressler's claim of agency vis-à-vis Palisades, because the essential element of consent by the principal is lacking.  *See Tellium*, 2004 U.S. Dist. Lexis 2289, at *18 (denying motion to compel because putative agent contested agency relationship).

In any event, the Pressler Defendants have introduced no evidence to support their claim of an agency relationship, and thus cannot invoke the arbitration provision through an agency theory.  *See Overseas Oil*, 1989 A.M.C. at 850; *Interbras Cayman Co. v. Orient Victory Shipping Co., S.A.*, 663 F.2d 4, 7 (2d Cir. 1981) (reversing and remanding for trial on agency, where appellant raised issue of fact regarding non-signatory's proffered evidence of agency).[9]

---

could prove that the arbitration clauses purporting to bind "subsidiary, parent or affiliate companies" of AT&T Wireless applied here, none of Defendants is a subsidiary, parent, or affiliate of AT&T.  *See Lucy v. Bay Credit*, 792 F. Supp. 2d 320, 326 (D. Conn. 2011) ("Because the arbitration agreement delineates which non-signatories may compel arbitration, [plaintiff] cannot fairly be considered to have consented to arbitration with any other entities.").

9.   Nor can the Pressler Defendants rely on Plaintiffs' Amended Complaint, which does not allege a principal-agent relationship between any of the Asta Defendants and any of the Pressler Defendants.  *Compare* Am. Compl. ¶¶ 496-98 (alleging enterprise relationship among Defendants with distinctive roles), *with Carroll v. Leboeuf, Lamb, Greene, & Macrae, LLP, et al.*, 374 F. Supp. 2d 375, 378 (S.D.N.Y. 2005)  (compelling arbitration where signatory plaintiffs "specifically and repeatedly allege" that signatory defendant "acted at all relevant times [as] the agent" of non-signatory defendants).

Moreover, even if the Pressler Defendants had proved they were agents of Palisades, that alone would not entitle them to compel arbitration.  "A nonsignatory cannot compel arbitration merely because he is an agent of one of the signatories."  *Westmoreland v. Sadoux*, 299 F.3d 462, 466 (5th Cir. 2002).  A non-signatory agent may not compel arbitration where "the claim(s) against the nonsignatory are independent of the agreement in which the arbitration clause appears."  *Luke v. Gentry Homes, Ltd*, 105 Haw. 241, 248 (2004); *see also Britton v. Co-Op Banking Group*, 4 F.3d 742, 748 (9th Cir. 1993) (denying signatory's agent's motion to compel because allegations of agent's "subsequent, independent acts of fraud" were "unrelated to any provision or interpretation of the contract" containing arbitration provision).  Here, the Pressler Defendants have not established that their actions arise out of the AT&T terms and conditions.  Nor can the Pressler Defendants claim, like the non-signatories in the *Roby* case they cite, that Plaintiffs' claims against them are "completely dependent on" their claims against the signatory principals to the arbitration agreements.  *See Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir. 1993).  The Pressler Defendants have no relationship to signatory AT&T Wireless, but even with respect to Palisades, Plaintiffs' allegations against the Pressler Defendants are distinct.  Indeed, much of the wrongdoing alleged against the Pressler Defendants, including Plaintiffs' Fifth Cause of Action, relates specifically to their actions as counsel.  (*See* Am. Compl. ¶¶ 49-110, 537-543.)

Likewise, Asta and Stern cannot claim to be agents of AT&T Wireless, and should not be entitled to enforce any rights Palisades Collection may have acquired on the bare assertion that they acted as Palisades's agents.  (Def. Mem. 10.)  Defendants have not even articulated a theory under which either Asta or Stern acted as Palisades's agent, much less made any factual showing.  The conclusory statement that Asta and Stern are entitled to compel arbitration

because they are being sued "based on their relationship to Palisades" (*id.*) falls far short of an evidentiary proffer from which the Court could find an agency relationship.

Furthermore, "a corporate relationship is generally not enough to bind a nonsignatory to an arbitration agreement." *In Re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 191 (Tex. 2007) ("[C]orporate affiliates are generally created to separate the businesses, liabilities, and contracts of each. Thus, a contract with one corporation—including a contract to arbitrate disputes—is generally not a contract with any other corporate affiliates."). Here, the corporate relationship among Palisades Collection, Asta, and Stern is not, by itself, a basis to compel arbitration. They have not alleged, for example, the kind of relationship that supported the court's order compelling arbitration in *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 668 (2d Cir. 1997), a case the Asta Defendants mischaracterize. (Def. Mem. 10.) There, the arbitration clause applied to a non-signatory who "owned and controlled" the co-defendant corporation signatory, and who had actually negotiated the agreement with plaintiff on the signatory's behalf. *Id.* (finding that "*disclosed* agents of an entity that is a party to an arbitration agreement are protected by that agreement" (emphasis added; quotation marks omitted)). Here, by contrast, at the time AT&T Wireless customers entered any agreement, none of the Defendants was employed by or otherwise affiliated with AT&T Wireless, and certainly was not disclosed to AT&T Wireless customers.

> **3.    Neither The Pressler Defendants Nor The Asta Defendants Can Assert The Arbitration Provision on the Basis of Estoppel.**

Defendants also argue that even though they were not parties to any arbitration agreement, Plaintiffs should be estopped from refusing to arbitrate under equitable principles. (Def. Mem. 10.) Estoppel is based on fairness: "the basic principle that one does not give up one's right to court adjudication except by consent." *Sokol Holdings, Inc. v. BMB Munai, Inc.*,

542 F.3d 354, 361 (2d Cir. 2008).  Only in limited circumstances may a non-signatory compel a

signatory plaintiff to arbitrate on an estoppel theory: a court should deny a third party's motion to

compel arbitration unless (1) "the relationship among the parties, the contracts they signed . . .

and the issues that had arisen" among them discloses that "the issues the nonsignatory is seeking

to resolve in arbitration are intertwined with the agreement that the estopped party has signed";

and (2) "there [is] a relationship among the parties of a nature that justifies" permitting a non-

signatory to stand in the shoes of a signatory and compel arbitration under the agreement. *Id.* at

358-59 (quotation marks omitted).  Defendants have not satisfied either element.

    To estop Plaintiffs from refusing to arbitrate with Defendants on the grounds that

Defendants were not parties to the AT&T terms and conditions, Defendants must show that

Plaintiffs' claims are "intertwined" with the terms and conditions.  "*At a minimum,* the

signatory's claims must make reference to or presume the existence of the written agreement."

*Birmingham Assocs. Ltd. v Abbott Labs.*, 547 F. Supp. 2d 295, 301 (S.D.N.Y. 2008) *aff'd*, 328 F.

App'x 42 (2d Cir. 2009) (emphasis added).  But Plaintiffs' claims—that Defendants collected

debts through mass litigation to obtain default judgments against consumers without sufficient

proof and on the basis of false affidavits (Am. Compl. ¶ 3)—do not meet this minimum standard,

even for any Plaintiff who did enter into those terms and conditions.  The claims in no way relate

to the validity, interpretation, enforcement, or breach of the terms and conditions.  Indeed, the

Amended Complaint alleges that Defendants committed the misconduct described therein against

both individuals who held AT&T accounts and those who did not (and thus agreed to no terms

and conditions at all).  (*See id.* ¶ 86.)

    In *Stechler v. Sidley, Austin, Brown & Wood L.L.P.*, 382 F. Supp. 2d 580 (S.D.N.Y.

2005), the court refused to permit a non-signatory law firm to invoke the arbitration agreement

entered by its alleged co-conspirator with whom it had offered an allegedly fraudulent tax shelter.  The plaintiffs' claims against the firm were not intertwined because they "can hardly be characterized as arising out of or being integrally related to the Agreements [between the plaintiffs and the firm's alleged co-conspirator]; nor do they make reference to or presume the existence of the Agreements. Were this Court to find the Agreements void, invalid, or unenforceable, Plaintiffs would still have valid causes of action."  382 F. Supp. 2d at 591-92 (S.D.N.Y. 2005) (footnotes and punctuation omitted); *cf. Lawson v. Life of the South Ins. Co.,* 648 F.3d 1166, 1174 (even if non-signatory defendants could show that plaintiffs would not have interacted with them "'but-for'" their having entered the arbitration agreement, that "is not enough to warrant equitable estoppel" where agreement is not "legal basis of their claims"). Similarly, even if the AT&T terms and conditions were "void, invalid, or unenforceable" against some or all Plaintiffs, "Plaintiffs would still have valid causes of action" against the Asta and Pressler Defendants.  *See Stechler,* 382 F. Supp. 2d at 591-92.  Thus, Plaintiffs' claims are not intertwined with the AT&T terms and conditions.

To estop Plaintiffs from refusing to arbitrate with Defendants as non-signatories, Defendants also must establish that they have a sufficiently close relationship with the signatory to make Plaintiffs' refusal to arbitrate unfair.  Specifically, they must show "a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement."  *See Sokol*, 542 F.3d at 358-63.  The Second Circuit has explained that a party—"x"—can only be compelled to arbitrate by a non-signatory if x would have "reasonably seen" that its agreement to arbitrate would extend not only to its counterparty but to the non-signatory, "an entity that was, or would

predictably become, with x's knowledge and consent, affiliated or associated with [the counterparty]." *Id.* at 361.  Estoppel only applies where it would be "unfair to allow x to avoid its commitment to arbitrate" just because the non-signatory is not technically the party with which x contracted.  *Id.*

Here, Defendants have not established that Plaintiffs' alleged relationships with AT&T to purchase cellular phone service were such that Plaintiffs should have "reasonably seen" that any obligation to arbitrate with AT&T would extend to Defendants.  Plaintiffs here could not reasonably have foreseen the possibility of arbitrating against the Pressler Defendants—counsel for a future, unidentified buyer of AT&T debt—and the Asta Defendants—the parent company and executive of that future, unidentified buyer—when they opened any AT&T accounts.[10] Indeed, "contractually speaking, the plaintiff[s] do[] not know [the Pressler Defendants or the Asta Defendants] from Adam." *Lucy v. Bay Area Credit Svcs. LLC*, 792 F. Supp. 2d 320, 326 (D. Conn. 2011) (quoting *Ross*, 547 F.3d at 146).  In *Lucy*, which also involved a debt collector's attempt to enforce an alleged arbitration agreement between AT&T Wireless and a customer, the court held that the debt collector "was not a signatory to the Wireless Service Agreement [and] was not even among the class of nonsignatory entities for which Lucy granted permission to invoke the arbitration clause," and thus could not enforce the agreement. *Id.* at 327.

Moreover, the Pressler Defendants offer no support for the proposition that they are entitled to benefit from the arbitration clause by virtue of their attorney-client relationship with Palisades, but for the *ipse dixit* that the principle "must be true."  (Pressler Defs.' Joinder of Asta Defs.' Mot. To Compel Arbitration 2.)  To the contrary, a defendant law firm cannot compel arbitration based on its client's arbitration agreements (much less its client's assignor's

---

10.  This is reinforced by the fact that the sample arbitration provisions provide for arbitration under the American Association's "*Wireless Industry* Arbitration Rules."  (Jordana Decl. Ex. 1, at 41(emphasis added).)

agreements) even where the plaintiffs allege conspiracy among the firm and its clients, unless the plaintiffs' allegations treat the defendants "as though they were interchangeable and as 'a single unit.'" *Stechler*, 382 F. Supp. 2d at 591.

In *Stechler*, the court found that the allegations against the defendant law firm were not sufficiently intertwined with the arbitration agreements to work an estoppel, noting that the defendants "played different and distinct roles in the alleged conspiracy" and thus "their claims 'can hardly be characterized as arising out of or being integrally related to' the Agreements." *Id.* at 591-92 (footnotes omitted). As such, the court denied the firm's motion to compel arbitration, reasoning that the plaintiffs could not "have imagined that, in entering into an arbitration agreement with DGI and Alpha, they were also entering into an arbitration agreement with [the law firm]." *Id.* at 592.

Here, the Pressler Defendants have no relationship whatsoever with signatory AT&T. Even if it were sufficient for them to allege a relationship with Palisades Collection, Plaintiffs allege that the Pressler Defendants "played different and distinct roles" from Palisades in their conspiracy to collect debts unlawfully. *See Stechler*, 382 F. Supp. 2d at 591; (*see, e.g.*, Am. Compl. ¶¶ 71, 72, 77 (Pressler); ¶¶ 120 (Palisades Collection).

Moreover, "the essential question in situations such as these is whether Plaintiffs would have an independent right to recover against the non-signatory Defendants even if the contract containing the arbitration clause were void." *Miron v. BDO Seidman, LLP*, 342 F. Supp. 2d 324, 333 (E.D. Pa. 2004) (citing *Massen v. Cliff*, No. 02-9282, 2003 U.S. Dist. LEXIS 7392, at *14 (S.D.N.Y. May 1, 2003)). Here, the answer is a resounding yes: Plaintiffs do not rely on the AT&T terms and conditions in making their claims against any Defendants, and have an independent right to recover against all Defendants regardless of the applicability of any such

terms.

Finally, it would be an unprecedented expansion of the estoppel doctrine to extend the arbitration provision not merely to affiliates of the original signatory, but to affiliates of an assignee.[11]  Such broad application of estoppel is incompatible with the notions of fairness and foreseeability that underlie the doctrine.  Ultimately, the issue of whether to apply equitable estoppel is fact-specific and for the court's discretion.  *See JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 178 (2d Cir. 2004).  Here, the factual circumstances support exercising that discretion to bar these non-signatories from enforcing the arbitration clause.

**E.     If the Court Does Not Deny With Prejudice Defendants' Motion to Compel Arbitration, Plaintiffs are Entitled to Discovery and a Hearing on Disputed Issues of Fact.**

Defendants have not identified which arbitration agreements they claim mandate arbitration of Mr. Roberts's and Mr. Viruet's claims, *see supra* Section I.B; have not established that any of the sample agreements they offer would cover the claims raised in this suit, *see supra* Section I.C; and have not demonstrated that they, as non-signatories to any agreement, could enforce its arbitration provision, *see supra* Section I.D.  Plaintiffs thus respectfully request that the Court promptly deny Defendants' motion to compel in its entirety, with prejudice.

In *Hines v. Overstock.com*, the party moving to compel arbitration failed to meet its initial burden to establish that a binding arbitration agreement was formed.  380 F. App'x at *24.  The party sought reconsideration on the basis of additional evidence that it "could have introduced . . . in its initial motion but did not."  *Id.* at *25.  The district court denied the motion to reconsider, and the Court of Appeals affirmed.  *Id.*  This Court likewise should deny

---

11. Other than *Gray v. Suttell & Assocs.*, No. CV-09-251, 2012 U.S. Dist. LEXIS 77906, *6 (E.D. Wash. Mar. 16, 2012), an unpublished district court decision not controlling on this Court, Defendants cite no support for the proposition that a non-signatory affiliate of an assignee can have a sufficiently close relationship to a plaintiff signatory.  Indeed, even to the extent the Court deems *Gray* persuasive authority, it stands at most for the proposition that a parent company and corporate affiliate of an assignee can have a sufficiently close relationship, and does not address the relationship of agents or attorneys of assignees.

Defendants' motion with prejudice, without affording Defendants an opportunity to "offer evidence that, with any amount of due diligence, could have been submitted in support of the original motion."  Order, *Hines v. Overstock.com, Inc.*, No. 09 Civ. 991 (E.D.N.Y. Sept. 22, 2009) (Dkt. 13).

If the Court does not deny the motion with prejudice, however, significant issues of material fact preclude granting the motion without a hearing.  *See Bensadoun*, 316 F.3d at 175. These issues, on which Defendants have presented no undisputed admissible evidence, include whether each Plaintiff was an AT&T accountholder, the specific terms and scope of any account agreement, whether each Plaintiff was presented with those terms, and whether each Plaintiff agreed to those terms. *See supra* Section I.B; (Roberts Decl. ¶¶ 5-11); (Viruet Decl. ¶¶ 2-3, 6-7, 9-10).  Plaintiffs are entitled to, and hereby request, a jury trial on these issues.  *See* 9 U.S.C. § 4.

Moreover, if the motion is not denied with prejudice, Plaintiffs will seek discovery on these disputed issues and others that relate to the enforceability of the agreements.  *See, e.g., Berger v. Cantor Fitzgerald Secs.*, 942 F. Supp. 963, 966 (S.D.N.Y. 1996) (plaintiff opposing arbitration entitled to discovery on whether agreement was made and could be enforced). Among other things, Plaintiffs would seek discovery of the following, without limitation: documents and testimony from Defendants concerning the accounts of any Plaintiff whose claims Defendants seek to arbitrate; third-party discovery from AT&T Wireless concerning the same; documents and testimony concerning the manner in which AT&T Wireless customers entered terms and conditions; and documents and testimony concerning the relationships among the Asta Defendants and Pressler Defendants.

Finally, if the motion is not denied, and Defendants instead are given the opportunity to submit evidence identifying specific terms and conditions applicable to each Plaintiff, Plaintiffs

reserve their right to present arguments concerning those particular agreements—arguments not

presented here because Defendants have not established what agreement applies to each Plaintiff

and their "example" agreements differ materially with respect to key issues.[12]  In particular,

Plaintiffs reserve the right to argue that arbitration costs render any arbitration provision

unenforceable; that any class action waiver conflicts with congressional intent as expressed in

the FDCPA and other statutes; that the circumstances under which any Plaintiff entered any

agreement were procedurally unconscionable; and that any applicable provisions' limitations on

available remedies (such as punitive damages and costs and fees) render the provision

unenforceable, among other arguments.

## II.    DEFENDANTS HAVE FAILED TO IDENTIFY ANY SPECIFIC DISCOVERY TO WHICH THEY ARE ENTITLED.

Defendants request "certain limited discovery" related to "[w]hether [Plaintiffs]

Bernhart's and Brito's [c]laims are [s]ubject to [a]rbitration."  (Def. Mem. 13.)  Plaintiffs note

the irony in Defendants' request: these Defendants already have obtained default judgments

against Ms. Bernhart (twice) and Mr. Brito on Defendants' sworn representations that they could

prove these Plaintiffs owed AT&T Wireless debts.  Their amorphous discovery request

essentially admits a central allegation of the Amended Complaint: that Defendants never had,

and could not get, admissible evidence sufficient to establish those claims.

There is no need for discovery regarding Ms. Bernhart and Mr. Brito, because any motion

to compel them to arbitrate their claims would fail for all the reasons stated herein.  *See supra*

Section I.  In any event, Plaintiffs do not oppose as a general matter the exchange of limited

discovery.  Plaintiffs cannot address the appropriateness of any specific requests, however, until

Defendants identify them.  At such time as Defendants serve formal discovery requests,

---

12. For example, the costs of arbitration differ from one sample agreement to another.  *See supra* Section I.B.

specifying the materials they seek, Plaintiffs reserve all rights to object to any such requests on

all available grounds under the Federal Rules of Civil Procedure.

### III.  EVEN IF THE COURT GRANTS DEFENDANTS' MOTION AS TO SOME PLAINTIFFS OR FOR SOME DEFENDANTS, THE REMAINDER OF THE CASE SHOULD PROCEED.

Defendants request a stay of this litigation until the conclusion of arbitration by "the

plaintiffs whose claims are subject to arbitration." (Def. Mem. 13-14.)  Even if the Court were to

find that the claims of some Plaintiffs are subject to arbitration (or claims of all Plaintiffs against

only some Defendants), the claims of the other Plaintiffs (or against other Defendants) should

proceed in this litigation without delay.  Defendants have presented no argument to the contrary.

The right to litigate a case "is substantially diminished if such claims must lay dormant

until other claims arising out of the same series of events have been arbitrated."  *Chang v. Lin*,

824 F.2d 219, 222 (2d Cir. 1987).  Delay prejudices plaintiffs because evidence supporting their

claims "may become stale or unavailable prior to the conclusion of the arbitration," and

defendants "may well be inclined to prolong the arbitration unnecessarily in the hope that

plaintiffs ultimately will be forced to abandon their nonarbitrable claims."  *Id.*; *see also Dean

Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985) (holding that nonarbitrable claims may

proceed in litigation while other claims are arbitrated).

If the Court finds any of Plaintiffs' claims nonarbitrable, Defendants may not, as a matter

of right, stay the remaining litigation.  *See Sierra Rutile Ltd. v. Katz*, 937 F.2d 743,750 (2d Cir.

1991).  To obtain a discretionary stay, Defendants bear the burden of proving that such a stay

will not hamper the progress of the arbitration; that the arbitration will not take an unduly long

time; and that any delay for the arbitration will not cause Plaintiffs undue hardship.  *See id.*; *Am.

Shipping Line, Inc. v. Massan Shipping Indus., Inc.*, 885 F. Supp. 499, 502 (S.D.N.Y. 1995).

Moreover, "if there is even a fair possibility" that a stay "will work damage to" Plaintiffs,

Defendants must show that proceeding with litigation will cause a "clear case of hardship or inequity" for Defendants. *LaSala v. Needham & Co., Inc.*, 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005).

No Defendant here has attempted to show either that Plaintiffs would not be harmed by a stay, or that any Defendant would be harmed if litigation proceeded.  Nor could Defendants make such a showing.  Plaintiffs are consumers who have been subject to unlawful collection actions causing them financial and other losses.  Delaying litigation of the non-arbitrable issues or against non-arbitrating parties would cause undue hardship to these consumers, who would remain vulnerable to unlawful practices without recourse to their statutory rights to obtain relief from any non-arbitrating Defendants or on any non-arbitrable claims.  *See, e.g., Greenlight Reinsurance, Ltd. v. Appalachian Underwriters, Inc.*, No. 12 CIV. 8544 (JPO), 2013 WL 3835341, at *10 (S.D.N.Y. July 25, 2013).  This hardship would be further magnified for those Plaintiffs who never had accounts with AT&T—and whose rights thus would be sacrificed because of *other* people's agreements.  Accordingly, Defendants' request for a stay must be denied.

**IV.    THE COURT SHOULD DENY DEFENDANTS' MOTION TO DISMISS MR. VIRUET'S CLAIMS BECAUSE THEY ARE DISTINCT FROM THE STATE COURT COLLECTION ACTION AGAINST HIM.**

**A.    The Rooker-Feldman Doctrine Does Not Bar Mr. Viruet's Claims.**

Defendants contend that because Mr. Viruet's claims supposedly are "founded entirely" on allegations that he did not owe money on an AT&T Wireless account and that the Asta Defendants' state-court judgment "was wrongfully obtained," the Court should find them barred by the Rooker-Feldman doctrine.  (Def. Mem. 14.)  This argument misrepresents both Rooker-Feldman and the Amended Complaint.

In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, the Supreme Court severely

30

circumscribed the Rooker-Feldman doctrine, confining it to "cases of the kind from which the doctrine acquired its name," that is, those where plaintiffs "seek[] what in substance would be appellate review of the state judgment in a United States district court."  544 U.S. 280, 284, 287 (2005).  There are two substantive requirements for the doctrine to apply: "the plaintiff must complain of injuries caused by a state-court judgment," and "the plaintiff must invite district court review and rejection of that judgment."  *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (quotation marks and alterations omitted).[13]  Neither is met here.

First, although Defendants contend that Mr. Viruet's injuries "spr[a]ng from" the state-court judgment (Def. Mem. 15), Mr. Viruet in fact is complaining of injuries caused by *Defendants' misconduct*—that is, filing lawsuits with insufficient information and review and seeking default judgments on the basis of false affidavits—not by the state-court judgment itself. That the entry of judgment ultimately allowed Defendants to profit from this conduct does not alter the result, because the Rooker-Feldman inquiry focuses on the source of the harm.  The Second Circuit relied on this critical distinction in *Gabriele v. American Home Mortgage Servicing, Inc*., 503 F. App'x 89 (2d Cir. 2012).  The plaintiff there asserted that the defendant had obtained a state court foreclosure judgment by submitting false and deceptive state court filings.  *Id*. at 92.  The Court of Appeals found the district court's Rooker-Feldman dismissal improper because the plaintiff "d[id] not complain of injuries *caused* by the state court judgment."  *Id*.  Rather, they were caused by "[t]he alleged litigation misconduct," which "was not the product of the state court's denial of sanctions, its judgment of strict foreclosure, or any other decision rendered."  *Id*.

Similarly, the plaintiff in *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*

---

13.  There are also two procedural requirements, that the state court judgment went against the federal plaintiff and that it was entered before the federal suit was filed, which are not in dispute.

claimed that a state court judgment against it resulted from misconduct by the defendant and others in the course of the proceedings.  615 F. 3d 159, 161-63 (3d Cir. 2010).  The Third Circuit held that Rooker-Feldman did not bar the suit, because the plaintiff was not asking the court to "concern[] itself with the bona fides of the prior judgment." *Id*. at 169.  Just as in *Great Western*, Mr. Viruet is not complaining "of legal injury caused by a state court judgment *because of a legal error committed by the state court*"; instead, he is "complaining of legal injury caused by the adverse party"—Defendants here. *Id*. (emphasis added) (quotation marks omitted).  Other courts have reached the same result in similar cases.[14]

Nor is the other substantive Rooker-Feldman criterion met here, because Mr. Viruet does not "invite district court review and rejection of" the state-court judgment.  Notably, Mr. Viruet has not asked this court to vacate or reverse the state-court judgment.  That a finding in Mr. Viruet's favor here might "'den[y] a legal conclusion' reached by the state court'" does not trigger the doctrine. *Hoblock*, 422 F.3d at 86 (citing *Exxon Mobil*, 544 U.S. at 293).  The Second Circuit confirmed this result in *Shechet v. Abby Favali*, where the plaintiff complained of civil rights violations in state court proceedings resulting in two child-support orders against him.  No. 05-5027, 2006 WL 1308656, at *1 (2d Cir. May 9, 2006).  The court found that Rooker-Feldman did not bar the suit because the plaintiff "d[id] not seek reversal of the child-support orders . . . but rather seeks money damages . . . for defendants-appellees' conduct during the state-court

---

14. *See, e.g.*, *Marshall v. Grant*, 521 F. Supp. 2d 240, 245 (E.D.N.Y. 2007) (plaintiff's injuries not "produced by" state-court judgment because cause of injury was "Defendants' actions—their alleged perjury, fraud and misrepresentations" in obtaining judgment); *Todd v. Weltman, Weinberg & Reis, Co., L.P.A.*, 348 F. Supp. 2d 903, 911 (S.D. Ohio 2004) (no Rooker-Feldman because "action forming the basis of Plaintiffs' FDCPA claims, the filing of a false affidavit [in state court proceeding], was complete before the state court" issued a judgment); *Wyles v. Excalibur I, LLC*, No. 05 Civ. 2798, 2006 WL 2583200, at *2 (D. Minn. Sept. 7, 2006) ("when a debtor brings an action under the FDCPA, the action does not challenge the state court judgment itself, but rather challenges the debt collection practices that led to the judgment"; Rooker-Feldman inapplicable because plaintiff challenged debt buyer's litigation misconduct, "not the validity of the debt itself"); *Senftle v. Landau*, 390 F. Supp. 2d 463, 469 (D. Md. 2005) (FDCPA claims pertaining to manner of debt collection, which resulted in state-court judgment, not barred because claim "has nothing to do with whether the underlying debt is valid").

proceedings." *Id.*  As in that case, providing relief to Mr. Viruet "would not require disturbing the [state-court] orders themselves," so this case is not barred by Rooker-Feldman. *Id.*[15]

Because Mr. Viruet's claims concern Defendants' misconduct, an issue "independent" of the correctness of the state court's determination, and do not seek to "overturn" any state-court judgment, Rooker Feldman does not apply. *Exxon Mobil*, 544 U.S. at 291-93.

### B.    Claim Preclusion Does Not Bar Mr. Viruet's Claims.

Claim preclusion, or *res judicata*, does not preclude Mr. Viruet's FDCPA, RICO, and New York General Business Law and Judiciary Law claims, because those claims do not arise out of the "same transaction or series of transactions" from which the state court debt collection action arose.  The state court action concerned whether Mr. Viruet owed a debt to AT&T Wireless, while this action concerns unlawful collection litigation practices by the Asta and Pressler Defendants.

A federal court assessing the preclusive effect of a prior New York state case must apply New York's "transactional approach," which precludes *only* claims between parties in privity that "aris[e] out of the same transaction or series of transactions."  *Genger ex rel. AG Properties Co. v. Sharon*, 910 F. Supp. 2d 581, 587 (S.D.N.Y. 2012) (quoting *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357 (1981)).  If the later claims do not arise "out of the *same factual grouping* as an earlier litigated claim," they are not barred.  *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (emphasis added).  Courts must be careful not to apply "the [claim preclusion] doctrine too

---

15. *See also McNamara v. Kaye*, 360 F. App'x 177, 177 (2d Cir. 2009) ("Rooker-Feldman only applies when the requested federal court remedy of an alleged injury caused by a state court judgment would require overturning or modifying that state court judgment," not when plaintiff seeks "damages and prospective relief"); *Gabriele*, 503 F. App'x at 92 (plaintiff seeking relief for defendants' fraudulent litigation conduct not barred because he "does not seek to undo the state court judgment through this federal action"); *Mascoll v. Strumpf*, No. 05-CV-667 (SLT), 2006 WL 2795175, at * 8 (E.D.N.Y. Sept. 26, 2006 (action alleging defendants "misused judicial process by wrongly persisting in efforts to collect on a debt" they knew they had no right to collect did not implicate Rooker-Feldman because plaintiff sought money damages and action "would continue even if the state-court judgment were vacated").

harshly, and thus, in properly seeking to deny a litigant two days in court, deprive [the litigant] of one." *Genger*, 910 F. Supp. 2d at 587 (quotation marks omitted).

New York courts apply a "pragmatic test" to determine whether claims should be barred, "analyzing whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.* at 587 (quotation marks omitted). Mr. Viruet's claims do not satisfy any of these criteria. The relevant facts occurred several years apart: the debt collection case dealt exclusively with an AT&T Wireless debt allegedly incurred in 2002 and 2003, while the claims in this action arise out of Defendants' litigation practices from 2006 to the present. These claims also rely upon different evidence, including information about Defendants' fraudulent conduct of which Mr. Viruet was unaware during the state court litigation.

It is well-established that claims such as Mr. Viruet's need not be treated as a unit with the underlying debt collection case. Numerous courts have concluded that FDCPA and related claims challenging collection methods are wholly separate from any challenges to the validity of the underlying debt. *See, e.g., Fritz v. Resurgent Capital Servs., LP*, No. 11-CV-3300 FB VVP, , 2013 WL 3821479, at *7 (E.D.N.Y. July 24, 2013) ("Plaintiffs—as defendants in the collection actions—did not raise the FDCPA or § 349, either as defenses to collection or as counterclaims. There is, moreover, no conceptual reason for them to have done so. Such claims challenge the method of debt collection, not the underlying debt."); *Schuh v. Druckman & Sinel, L.L.P.*, 602 F. Supp. 2d 454, 467 (S.D.N.Y. 2009) ("The FDCPA claim… is independent from the transaction that was adjudicated in the state court – that is, the foreclosure on the mortgage and the amounts

34

due under the [] loan.").[16]

The Pressler Defendants' attempt to join the Asta Defendants' motion to dismiss Mr. Viruet's claims also must fail for the independent reason that they—as Palisades' attorneys in the state court action—were not themselves parties to that action.  To hold otherwise would require a state court defendant to initiate third-party practice against his adversary's attorneys in order to preserve FDCPA claims, an absurd result the Second Circuit has rejected as inconsistent with New York law.  *See Cousins v. Duane St. Assocs.*, 7 F. App'x 85, at *2 (2d Cir. 2001).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motions should be denied.

---

16.  *Cf. Harris v. Jacob Marsh, LLC*, No. 12-CV-356A, 2012 WL 3655357, at *3 (W.D.N.Y. July 6, 2012) (no supplemental jurisdiction because "FDCPA claims and [debt collection claims] are not related on a transactional level" because former involves "manner and techniques of debt collection" while latter involves "validity of debt under state law"), *report and recommendation adopted,* 2012 WL 3655334 (W.D.N.Y. Aug. 23, 2012); *Leatherwood v. Universal Bus. Serv. Co.*, 115 F.R.D. 48, 49-50 (W.D.N.Y. 1987) (holding same even where debt collection claims and FDCPA claims were "'offshoots' of the same basic transaction").

Dated: New York, New York
       October 8, 2013

Respectfully Submitted,

**NEW YORK LEGAL ASSISTANCE GROUP**
**YISROEL SCHULMAN, ESQ.**

By: _____
       Jane Greengold Stevens, of counsel
       Danielle Tarantolo, of counsel
       Julia Russell, of counsel
7 Hanover Square, 18th Floor
New York, NY 10004
Telephone: (212) 613-5000
Facsimile:  (212) 750-0820
Email:  jstevens@nylag.org
Email:  dtarantolo@nylag.org
Email:  jrussell@nylag.org

**HUGHES HUBBARD & REED LLP**

By: _____
       Diane E. Lifton
       Shannon F. Green
       Meaghan C. Gragg
One Battery Park Plaza
New York, New York 10004
Telephone:  (212) 837-6000
Facsimile:  (212) 422-4726
Email: lifton@hugheshubbard.com
Email: greens@hugheshubbard.com
Email: gragg@hugheshubbard.com

*Attorneys for Plaintiffs*